THE PEOPLE *ex rel.* Frank R. Reid, State's Attorney,

*v.*

C. J. ZELLAR *et al.*

*Opinion filed December 22, 1906.*

QUO WARRANTO—*drainage record may be amended to show the facts after filing quo warranto petition.* The record of the organization of a drainage district may be amended to show the actual facts and to correct clerical errors and omissions, at any time before the trial, under a petition in the nature of *quo warranto* to test the validity of such organization.

APPEAL from the Circuit Court of Lee county; the Hon. CHARLES A. BISHOP, Judge, presiding.

This is a petition for *quo warranto,* filed in the circuit court of Kane county on behalf of the People, on the relation of Frank R. Reid, State's attorney, against appellees, C. J. Zellar, L. P. Myers and John Ashe, to determine the validity of the organization of drainage district No. 1 of the township of Sugar Grove, in said county, and the right of appellees to act as commissioners of the same. Upon the filing of the petition a summons was duly issued and the defendants appeared, setting up, by way of plea, what they claimed to be the drainage record. The petitioner filed a replication averring that defendants had not truthfully set forth the record and pointing out wherein they had falsely set up proceedings which were never had. To this replication the defendants rejoined re-asserting the truthfulness of their original averments, and issue was thereupon joined. Upon a final hearing an order was entered denying the petition and ordering the petition quashed, and from that judgment this appeal has been taken.

FRANK R. REID, State's Attorney, (DOLPH, BUELL & ABBEY, of counsel,) for appellant.

JOHN M. RAYMOND, and JOHN K. NEWHALL, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question for our decision is whether the records of the drainage district as set up in the plea show a valid organization.

The district was organized under the act providing for drainage for agricultural and sanitary purposes. (Hurd's Stat. 1905, chap. 42, p. 799.) Section 11 of that act provides that when the case involves a system of combined drainage in one town and it is proposed that the cost shall

be borne proportionately by the several parties benefited, a petition addressed to the drainage commissioners shall be presented to the town clerk, signed by a majority, in number, of the adult owners of land lying in the proposed district, and they shall be the owners, in the aggregate, of more than one-third of the land lying in the proposed district, or by the owners of the major part of the land and constituting one-third or more of the owners of the land in the proposed district, which petition shall describe the boundaries of the proposed district and request the organization of the district for agricultural and sanitary purposes by special assessment upon the property benefited thereunder. It is admitted that on September 26, 1905, a petition was filed with the town clerk as provided in this section, reciting that the same was signed by a majority, in number, of the adult land owners of the land lying in said proposed district, and that they were the owners, in the aggregate, of more than one-third of the land lying in said proposed district.

Section 12 provides that after the petition is filed in the office of the town clerk, it shall be his duty, within five days, to give notice, in writing, to each of the commissioners of highways of such town of the filing of such petition, and if there are two parties, only, interested in the drainage, he shall give notice to each of them, but if there are more than two parties, then the notice shall be given by posting written or printed notices in at least three public places in or near the proposed drainage district, which notice shall inform the persons interested that a meeting of the drainage commissioners will be held at such place and time as the commissioners may decide upon, not less than eight nor more than fifteen days from the date of said notice, for the purpose of organizing said drainage district. It is also admitted that the notice as required by this section was given by the town clerk and the meeting called for the town hall in the town of Sugar Grove, in said township and county, on October 7, 1905, at ten o'clock A. M.

Section 13 requires that at the time specified in the notice it shall be the duty of the drainage commissioners to meet and ascertain whether the petition contains the signatures of the required number of land owners, and the affidavits of two or more credible signers of said petition shall be received to the effect that they have examined the petition and are acquainted with the locality of the district, and that they believe that the petition is signed by the required number of land owners. Section 14 makes it the duty of the commissioners, if they shall find in favor of the petitioners, as set forth in section 13, to adjourn their meeting to a time not less than eight days nor more than fifteen days and properly announce the same. The record shows that on October 7, 1905, the commissioners met at the time and place specified in the notice of the town clerk, and that there were presented to them the affidavits of two credible witnesses, as required in section 13. A resolution was adopted by the commissioners at that meeting reciting the filing of the petition, the giving of notice thereunder, and that upon a hearing the commissioners found in favor of said petition. In this resolution, however, it is stated that the petition as originally presented is signed by one-third instead of a majority of the adult owners of land lying in said district, and that they are the owners, in the aggregate, of more than one-third of the land lying in the proposed district.

Section 14 also provides that during the time of the adjournment, not less than eight nor more than fifteen days, the commissioners shall go upon the land and personally examine the same. The record shows that in compliance with this section they did adjourn until October 17, 1905, during which time they went upon the land and made an examination thereof and employed a competent engineer to survey the same, and passed a resolution which recites that a petition filed by one-third of the adult owners of land in said proposed district had been filed with them, and that

they were the owners, in the aggregate, of more than a majority of the land lying in the proposed district. This resolution also recites that the commissioners find that said petitioners who have signed the petition comprised one-third of the persons owning land in said proposed district, and that said signers are the owners of a majority of the land in said district, and declares the district duly organized, as required by law.

The above is the record of the organization of the district as it appeared on the date of the filing of the petition for *quo warranto.* It is insisted by appellant that the record is not sufficient for three reasons: First, that the commissioners found that the petition was signed by one-third of the owners owning one-third of the land, which was not sufficient to give them jurisdiction to hear the petition and organize the district; second, that the commissioners failed to find, in their final order of organization, that the cost of the improvement would be less than the benefits to be derived therefrom; and third, that the commissioners, in their final order of organization, failed to find that the lands would be benefited for agricultural and sanitary purposes. It is also insisted that these three things are necessary to the jurisdiction of the commissioners before the district can be properly organized, and that in their absence no district exists.

The record further shows that on February 13, 1906, after the filing of the petition for *quo warranto,* the commissioners met and passed a resolution to the effect that said petition, as originally filed, was signed by a majority, in number, of the adult land owners of the land lying in said proposed district, and that the petitioners are the owners, in the aggregate, of more than one-third of the lands lying in said proposed district; also, that between October 7, 1905, and October 17, 1905, being the intervals between the second and third meetings, the commissioners went upon the land and made a personal examination of the same, and

that the lands in said district would be benefited for agricultural and sanitary purposes by the construction of such proposed drains, and that the cost thereof would be less than the benefits to be derived therefrom. Upon the trial of the case this amended record was offered in evidence.

It cannot be disputed that if the facts as recited in said amended record are true, the records of the drainage district show a legal organization thereof. But it is insisted by the appellants that the commissioners had no right to amend their records after the filing of the petition for *quo warranto,* and that they were bound by the same as they originally appeared. There can be no question but that a public body has a right to amend the records of its action at any time so as to make them conform to the real facts in the case. To hold otherwise would permit great injustice to be done to the public. A public body proves its acts by the record, and if there is a mistake or omission therein, those in charge of that record have a perfect right to amend it. *Board of Education* v. *Trustees of Schools,* 174 Ill. 510; *County of DuPage* v. *Commissioners of Highways,* 142 id. 607; *Turley* v. *County of Logan,* 17 id. 151; *County of Adams* v. *City of Quincy,* 130 id. 566.

Neither can there be any question but that the finding of the commissioners, as shown by the amended record, was in accordance with the facts and properly records the actual acts of the commissioners. The recital in the resolution adopted on October 7, 1905, as to the number of persons who signed the original petition was merely a clerical error. The petition itself, as originally filed, showed the requisite number of signers to the same. At the first meeting the commissioners received the affidavits of two of the petitioners, as required by the statute, who swore that it was signed by the requisite number. The evidence also shows that of the land owners interested in the petition the total number was fifteen, and of these eight signed the petition.

It cannot be successfully contended that the commissioners, upon viewing the land, as required in section 14, failed to find that the cost would be less than the benefits or that the lands would not be benefited for agricultural and sanitary purposes. That finding was one of the things absolutely requisite to the organization of the district. The petition recited the necessary facts and the commissioners found in favor of granting the petition in the exact words of section 14. In both cases the amendment was simply the recital of the facts as they should have appeared in the record but were omitted by oversight. This amendment could be made at any time prior to the trial of the case.

We find no reversible error, and the judgment of the circuit court will be affirmed. ·     *Judgment affirmed.*